ABNEY ET AL. *v.* UNITED STATES

No. 75–6521.   Argued January 17, 1977—Decided June 9, 1977

*Ralph David Samuel* argued the cause for petitioners. With him on the briefs were *Thomas C. Carroll, Mark D. Schaffer,* and *Joel Harvey Slomsky.*

*Assistant Attorney General Thornburgh* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Shirley Baccus-Lobel,* and *Marc Philip Richman.*\*

---

\**Veryl L. Riddle, Thomas C. Walsh,* and *Robert F. Scoular* filed a brief for Alexander J. Barket as *amicus curiae.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is a final decision within the meaning of 28 U. S. C. § 1291,[1] and thus immediately appealable. If it is a final decision, we must also decide: (a) whether the Double Jeopardy Clause bars the instant prosecution; (b) whether the courts of appeals have jurisdiction to consider non-double-jeopardy claims presented pendent to such appeals; and, if so, (c) whether the Court of Appeals erred in refusing to dismiss the indictment on the alternative grounds asserted by the petitioners.

(1)

In March 1974, a single-count indictment was returned in the United States District Court for the Eastern District of Pennsylvania charging petitioners, Donald Abney, Larry Starks, and Alonzo Robinson, and two others, with conspiracy and an attempt to obstruct interstate commerce by means of extortion, in violation of the Hobbs Act, 18 U. S. C. § 1951.[2] The Government's case was based upon the testimony of one Ulysses Rice, the alleged victim of the conspiracy. Rice was

---

[1] Section 1291 provides as follows:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

[2] Section 1951 provides in pertinent part:

"Whoever . . . obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

the owner and operator of a Philadelphia, Pa., tavern selling liquor that was distilled and bottled outside of the State. According to Rice, petitioners had engaged in a pattern of extortionate practices against him. Initially, such activities had been thinly veiled under the pretense of solicitations for subscriptions to Black Muslim newspapers, sales of various food items, and appeals for contributions for a Black Muslim holiday. Eventually, however, demands for larger sums of money, including $200 in weekly "taxes" accompanied by threats, were made upon Rice at his place of business. These threats led Rice to contact the Federal Bureau of Investigation which provided him with "marked money" and a body tape recorder in anticipation of future demands by the petitioners. When such a demand was made, Rice paid it with the marked currency and recorded the transaction on the body recorder. Petitioners were arrested despite their claims that all of the contributions by Rice had been bona fide gifts for Muslim religious causes. The tape recording of the last transaction was later introduced at petitioners' trial and, not surprisingly, it proved useful in refuting this claim of innocent purpose.

Both prior to, and during, the ensuing trial, the petitioners challenged the indictment on grounds of duplicity of offenses, claiming that its single count improperly charged *both* a conspiracy and an attempt to violate the Hobbs Act. Although the District Court apparently agreed with this contention, it refused either to dismiss the indictment or require the prosecutor to elect between theories. Rather, it required the Government to establish both offenses, as the prosecutor represented that he would do, and instructed the jury to that effect:

> "I would also point out that in the indictment it is charged that the defendants were guilty of both conspiracy and attempt and the *essential elements of both of these offenses must be proved before any defendant could be found guilty.*" Tr. 10–60 (emphasis added).

The jury returned a guilty verdict against each petitioner, but acquitted two others charged in the indictment.

On appeal, the United States Court of Appeals for the Third Circuit reversed petitioners' convictions and ordered a new trial on the ground that the key tape recording had been admitted into evidence without proper authentication. *United States* v. *Starks*, 515 F. 2d 112 (1975). The Court of Appeals also agreed with the petitioners' claim that the indictment was duplicitous. *Id.*, at 115–118. However, since the admission of the unauthenticated tape recording necessitated a new trial in any event, the court found it unnecessary to pass on the Government's argument that the indictment's duplicitous nature had been corrected by the trial court's instructions to the jury and was thus harmless. *Id.*, at 118. Nonetheless, it directed the Government to elect between the conspiracy and attempt charges on remand in order to avoid any similar problems at the next trial. *Id.*, at 118, 125.

On remand, the Government elected to proceed on the conspiracy charge. Petitioners then moved to dismiss the indictment, arguing: (a) that retrial would expose them to double jeopardy; and (b) that the indictment, as modified by the election, failed to charge an offense. The District Court denied the motion, and the petitioners immediately appealed to the Court of Appeals.

Before addressing the merits of petitioners' claims, the Government challenged the Court of Appeals' jurisdiction to hear the interlocutory appeal and asked that its prior decision in *United States* v. *DiSilvio*, 520 F. 2d 247 (1975), be overruled; there the court had held that the denial of a pretrial motion to dismiss an indictment on double jeopardy grounds constituted a final decision within the meaning of 28 U. S. C. § 1291, and, as such, was immediately appealable. 520 F. 2d, at 248 n. 2a. The Court of Appeals failed to address the Government's argument. Rather, after ordering the case to

be submitted on the briefs without oral argument, it affirmed the District Court by a judgment order which explicitly rejected both of the petitioners' attacks on the indictment. We granted certiorari to review the decision of the Court of Appeals.

(2)

We approach the threshold appealability question with two principles in mind. First, it is well settled that there is no constitutional right to an appeal. *McKane* v. *Durston,* 153 U. S. 684 (1894). Indeed, for a century after this Court was established, no appeal as of right existed in criminal cases, and, as a result, appellate review of criminal convictions was rarely allowed.[3] As the Court described this period in *Reetz* v. *Michigan,* 188 U. S. 505 (1903):

> "[T]rials under the Federal practice for even the gravest offences ended in the trial court, except in cases where two judges were present and certified a question of law to this court." *Id.,* at 508.

The right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come within the terms of the applicable statute—in this case, 28 U. S. C. § 1291.

Second, since appeals of right have been authorized by Congress in criminal cases, as in civil cases, there has been a firm congressional policy against interlocutory or "piecemeal" appeals and courts have consistently given effect to that policy. Finality of judgment has been required as a predicate for federal appellate jurisdiction.

> "The general principle of federal appellate jurisdiction, derived from the common law and enacted by the First

---

[3] Appeals as of right in criminal cases were first permitted in 1889 when Congress enacted a statute allowing such appeals "in all cases of conviction of crime the punishment of which provided by law is death." Act of Feb. 6, 1889, 25 Stat. 656. A general right of appeal in criminal cases was not created until 1911. Act of Mar. 3, 1911, 36 Stat. 1133.

Congress, requires that review of *nisi prius* proceedings await their termination by final judgment." *DiBella* v. *United States,* 369 U. S. 121, 124 (1962).

Accord, *Cobbledick* v. *United States,* 309 U. S. 323, 324–326 (1940). This principle is currently embodied in 28 U. S. C. § 1291 which grants the federal courts of appeals jurisdiction to review "all final decisions of the district courts," both civil and criminal. Adherence to this rule of finality has been particularly stringent in criminal prosecutions because "the delays and disruptions attendant upon intermediate appeal," which the rule is designed to avoid, "are especially inimical to the effective and fair administration of the criminal law." *DiBella, supra,* at 126. Accord, *Cobbledick, supra,* at 324–326.

The pretrial denial of a motion to dismiss an indictment on double jeopardy grounds is obviously not "final" in the sense that it terminates the criminal proceedings in the district court. Nonetheless, a number of the Courts of Appeals have held that § 1291 does not bar an immediate appeal from such a pretrial order. *United States* v. *Barket,* 530 F. 2d 181 (CA8 1975), cert. denied, 429 U. S. 917 (1976); *United States* v. *Beckerman,* 516 F. 2d 905 (CA2 1975); *United States* v. *Lansdown,* 460 F. 2d 164 (CA4 1972). Contra, *United States* v. *Young,* 544 F. 2d 415 (CA9 1976); *United States* v. *Bailey,* 512 F. 2d 833 (CA5 1975). In reaching this conclusion, those courts have taken the position that such pretrial orders fall within the so-called "collateral order" exception to the final-judgment rule first announced in *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949), and are thus "final decisions" within the meaning of § 1291.

*Cohen* was a shareholder's derivative civil action in which federal jurisdiction rested on the diverse citizenship of the parties. Prior to trial, a question arose over whether a state statute requiring the plaintiff shareholder to post security for the costs of litigation applied in the federal court. After the District Court denied its motion to require such security, the

corporate defendant sought immediate appellate review of the ruling in the Court of Appeals. That court reversed and ordered that security be posted. Thereafter, this Court held that the Court of Appeals had jurisdiction under § 1291 to entertain an appeal from the District Court's pretrial order.

In holding that the pretrial order was a "final decision" for purposes of § 1291, the Court recognized that § 1291 did not uniformly limit appellate jurisdiction to "those final judgments which terminate an action." 337 U. S., at 545; *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156, 171 (1974). Rather as Mr. Justice Jackson, the author of *Cohen,* later pointed out:

> "[I]t is a final *decision* that Congress has made reviewable. . . . While a final judgment always is a final decision, there are instances in which a final decision is not a final judgment." *Stack* v. *Boyle,* 342 U. S. 1, 12 (1951) (separate opinion).

That term, the Court held, was to be given a "practical rather than a technical construction." *Cohen, supra,* at 546. In giving it such a construction, the Court identified several factors which, in its view, rendered the District Court's order a "final decision" within the statute's meaning. First, the District Court's order had fully disposed of the question of the state security statute's applicability in federal court; in no sense, did it leave the matter "open, unfinished or inconclusive." *Ibid.* Second, the decision was not simply a "step toward final disposition of the merits of the case [which would] be merged in final judgment"; rather, it resolved an issue completely collateral to the cause of action asserted. *Ibid.* Finally, the decision had involved an important right which would be "lost, probably irreparably," if review had to await final judgment; hence, to be effective, appellate review in that special, limited setting had to be immediate. *Ibid.* The Court concluded:

> "This decision appears to fall in that small class which finally determine claims of right separable from, and

collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.,* at 546.

Although it is true that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds lacks the finality traditionally considered indispensable to appellate review, we conclude that such orders fall within the "small class of cases" that *Cohen* has placed beyond the confines of the final-judgment rule.[4] In the first place there can be no doubt that such orders constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee. Hence, *Cohen's* threshold requirement of a fully consummated decision is satisfied.

Moreover, the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.,* whether or not the accused is guilty of the offense charged. In arguing that the Double Jeopardy Clause of the Fifth Amendment bars his prosecution, the defendant makes no challenge whatsoever to the merits of the charge against him. Nor does he seek suppression of evidence which the Government plans to use in obtaining a conviction. See *DiBella* v. *United States, supra; Cogen* v. *United States,* 278 U. S. 221 (1929). Rather, he is contesting the very authority of the Government to hale him into court to face trial on the charge against him. *Menna* v.

---

[4] Of course, *Cohen's* collateral-order exception is equally applicable in both civil and criminal proceedings. While *Cohen* itself was a civil case, the Court's decision was based on its construction of 28 U. S. C. § 1291. As previously noted, that provision gives the courts of appeals jurisdiction to review "final decisions" of the district courts in both civil and criminal cases. See *Stack* v. *Boyle,* 342 U. S. 1 (1951).

*New York,* 423 U. S. 61 (1975); *Blackledge* v. *Perry,* 417 U. S. 21, 30 (1974); *Robinson* v. *Neil,* 409 U. S. 505, 509 (1973). The elements of that claim are completely independent of his guilt or innocence. Indeed, we explicitly recognized that fact in *Harris* v. *Washington,* 404 U. S. 55 (1971), where we held that a State Supreme Court's rejection of an accused's pretrial plea of former jeopardy constituted a "final" order for purposes of our appellate jurisdiction under 28 U. S. C. § 1257.[5]

> "Since the state courts have finally rejected a claim that the Constitution forbids a second *trial* of the petitioner, a claim separate and apart from the question whether the petitioner may constitutionally be *convicted* of the crimes with which he is charged, our jurisdiction is properly invoked under 28 U. S. C. § 1257." 404 U. S., at 56.

Accord, *Turner* v. *Arkansas,* 407 U. S. 366 (1972); *Colombo* v. *New York,* 405 U. S. 9 (1972). Thus, the matters embraced in the trial court's pretrial order here are truly collateral to the criminal prosecution itself in the sense that they will not "affect, or . . . be affected by, decision of the merits of this case." *Cohen,* 337 U. S., at 546.

Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments.

---

[5] Section 1257 provides in pertinent part:

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ."

It is a guarantee against being twice put to *trial* for the same offense.[6]

> " 'The Constitution of the United States, in the Fifth Amendment, declares, "nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb." The prohibition is not against being twice punished, but against being twice *put* in jeopardy . . . .' . . . The 'twice put in jeopardy' language of the Constitution thus relates to a potential, *i. e.*, the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." *Price* v. *Georgia,* 398 U. S. 323, 326 (1970).

See also *United States* v. *Jorn,* 400 U. S. 470, 479 (1971); *Green* v. *United States,* 355 U. S. 184, 187–188 (1957); *United States* v. *Ball,* 163 U. S. 662, 669 (1896). Because of this focus on the "risk" of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction. Mr. Justice Black aptly described the purpose of the Clause:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him

---

[6] See also *Ex parte Lange,* 18 Wall. 163, 169 (1874):

"The common law not only prohibited a second punishment for the same offence, *but it went further and [forbade] a second trial for the same offence,* whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted." (Emphasis added.)

to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green, supra,* at 187–188. Accord, *Breed* v. *Jones,* 421 U. S. 519, 529–530 (1975); *Serfass* v. *United States,* 420 U. S. 377, 387–388 (1975); *Jorn, supra,* at 479. Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit.[7] Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

We therefore hold that pretrial orders rejecting claims of former jeopardy, such as that presently before us, constitute "final decisions" and thus satisfy the jurisdictional prerequisites of § 1291.[8]

(3)

In determining that the courts of appeals may exercise jurisdiction over an appeal from a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds,

---

[7] A cogent analogy can be drawn to the *Cohen* decision. There, the corporate defendant claimed that the state security statute, if applicable, conferred on it a right not to face trial at all unless the dissatisfied shareholder first posted security for the costs of the litigation. By permitting an immediate appeal under those circumstances, this Court made sure that the benefits of the statute were not "canceled out."

[8] Admittedly, our holding may encourage some defendants to engage in dilatory appeals as the Solicitor General fears. However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy.

we, of course, do not hold that other claims contained in the motion to dismiss are immediately appealable as well. *United States* v. *Barket,* 530 F. 2d 181 (CA8 1975), cert. denied, 429 U. S. 917 (1976). Our conclusion that a defendant may seek immediate appellate review of a district court's rejection of his double jeopardy claim is based on the special considerations permeating claims of that nature which justify a departure from the normal rule of finality. Quite obviously, such considerations do not extend beyond the claim of former jeopardy and encompass other claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss. Rather, such claims are appealable if, and only if, they too fall within *Cohen*'s collateral-order exception to the final-judgment rule. Any other rule would encourage criminal defendants to seek review of, or assert, frivolous double jeopardy claims in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence.

Here, we think it clear that the District Court's rejection of petitioners' challenge to the sufficiency of the indictment does not come within the *Cohen* exception. First, an order denying a motion to dismiss an indictment for failure to state an offense is plainly not "collateral" in any sense of that term; rather it goes to the very heart of the issues to be resolved at the upcoming trial. Secondly, the issue resolved adversely to petitioners is such that it may be reviewed effectively, and, if necessary, corrected if and when a final judgment results. We therefore conclude that the Court of Appeals had no jurisdiction under § 1291 to pass on the merits of petitioners' challenge to the sufficiency of the indictment at this juncture in the proceedings.

(4)

We turn finally to the merits of petitioners' claim that their retrial, following the prosecutor's election to proceed on the single conspiracy charge, is barred by the Double Jeopardy

Clause. Their argument focuses on both the duplicitous indictment under which they were charged and the general verdict of guilty returned by the jury at their first trial. They maintain that because the indictment's single count charged them with both a conspiracy and an attempt to violate the Hobbs Act, it is impossible to determine the basis of the general verdict of guilt returned against them. Hence, they suggest that the jury might have convicted them on the attempt charge, but acquitted them of the charged conspiracy. This possibility, they conclude, prohibits their retrial on the conspiracy charge.

Whatever the merits of such an argument in another setting, we find no factual predicate for it here.[9] As we noted in our description of the petitioners' initial trial, the prosecutor, rather than electing between the attempt and conspiracy charges, represented to the court that he would establish *both* offenses. The court held him to his word and instructed the jury that it would have to find that the Government had established all of the elements of *both* crimes before it could return a verdict of guilty against the petitioners.[10] Indeed,

---

[9] In view of our determination that no factual predicate exists for petitioners' claim that the jury rendered an ambiguous verdict at their original trial, we find it unnecessary to reach the question of whether, assuming such ambiguity, their retrial would have been nonetheless permissible. See *United States* v. *Tateo*, 377 U. S. 463 (1964).

[10] In addition to the portion of the charge set out *supra,* at 654, the trial court gave the following instructions to the jury:

"[T]he defendants are charged not with the so-called substantive offense itself but rather with a conspiracy and attempt to obstruct, delay and affect interstate commerce by extortion. If the jury should find beyond a reasonable doubt that there was a conspiracy and an attempt to extort money from Mr. Rice, the natural and probable consequences of which conspiracy and attempt, if successfully carried out, would be to obstruct, delay and adversely affect interstate commerce in any way or degree, the offense charged in the indictment of conspiracy and attempt would be complete, and the jury could properly convict all defendants found beyond

it emphasized this fact to the jury immediately before it retired. *Supra,* at 654. We cannot assume that the jury disregarded these clear and unambiguous instructions and returned a guilty verdict without first finding that the Government had proved both crimes charged in the indictment beyond a reasonable doubt. *E. g., Shotwell Mfg. Co.* v. *United States,* 371 U. S. 341, 367 (1963). We are therefore satisfied that the jury did not acquit petitioners of the conspiracy charge; consequently, the Double Jeopardy Clause does not preclude their retrial for that crime. *E. g., North Carolina* v. *Pearce,* 395 U. S. 711, 719–720 (1969); *United States* v. *Tateo,* 377 U. S. 463 (1964).

Accordingly, the judgment of the Court of Appeals is affirmed in part, reversed in part, and remanded.

*It is so ordered.*

MR. JUSTICE WHITE concurs in the judgment.

---

a reasonable doubt to be members of the conspiracy and attempt." Tr. 10–25.

"[I]t becomes necessary for me to define both 'conspiracy' and 'attempt,' since the defendants are charged not with the substantive offense itself of obstructing, delaying or adversely affecting interstate commerce by extortion but rather a conspiracy and attempt so to do.

"Therefore, I shall define to you all of the requisites of both a conspiracy and an attempt, because all of these requisites must be found before the jury could find any defendant guilty." *Id.,* at 10–25—10–26.

"In this case the defendants are charged with a conspiracy and attempt, both as integral and essential parts of the single charge." *Id.,* at 10–35.

"[T]his charge being a single conspiracy and attempt to obstruct, delay and adversely or harmfully affect interstate commerce by extortion does not require proof that the conspiracy was successful, or that its unlawful objectives were obtained. The offense charged may be proved even though the conspiracy and attempt failed because the extortion was not successfully carried out." *Id.,* at 10–39.