**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hugo Richard GARZA,**
**Defendant-Appellant.**

**No. 81–2172**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 28, 1982.

Sam A. Westergren, Jr., Corpus Christi, Tex., for defendant-appellant.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RANDALL and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

Hugo Garza appeals a district court ruling denying his motion to dismiss on double jeopardy grounds the indictment against him after a mistrial was declared due to prejudicial evidence admitted at trial. We affirm.

## I.

### THE FACTS

Hugo Garza, together with his codefendant Glen Morisse, was indicted on November 15, 1979 for violation of federal drug laws. The six-count indictment charged both defendants with conspiracy to possess cocaine with intent to distribute, substantive possession of cocaine with intent to distribute, and four counts of actual distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1]

Before trial, Garza and Morisse each filed a motion for severance. Garza's motion was based on the fact that Morisse had a prior felony conviction in California and that he (Garza) did not have any prior convictions. Morisse moved for severance on the ground that Garza's anticipated defense of entrapment was incompatible with Morisse's defense of not guilty. The district court denied both motions. Thereafter, a jury was empanelled and trial began on April 21, 1980.

On the second day of trial, the prosecutor, Assistant U. S. Attorney Robert Berg, called as a witness Ralph Smith, an officer with the Texas Department of Public Safety. Officer Smith testified concerning the chain of custody with respect to amounts of cocaine that an undercover police officer had purchased from Garza on three separate occasions; Smith related that he had mailed the cocaine for laboratory analysis after receiving it from the undercover officer.

During cross-examination, Garza's retained counsel, Nago Alaniz, questioned Smith about any records or files on Garza's prior drug dealings that Smith or other law enforcement officials possessed. Prosecutor Berg objected twice to such questioning on the ground that no proper predicate had been laid to introduce evidence of the existence of the police records and files. Although these objections were sustained, Alaniz persisted in questioning Smith about his knowledge of Garza's activities. Smith testified that although he did not have personal knowledge of Garza's prior dealings, he had used information received from other police agencies in investigating and preparing his own report on Garza.

As a result of his cross-examination of Officer Smith, Alaniz brought evidence before the jury of Garza's trafficking in drugs prior to the time of the events for which Garza was indicted and standing trial. Specifically, the jury heard evidence that Garza had committed the following acts in the past: sold one gram of cocaine to a policeman, transported marijuana from Texas to West Virginia, and been observed at his place of business in possession of one kilogram of cocaine. The jury was also apprised that Garza had been classified as a Class I narcotic trafficker by the Corpus Christi, Texas police department.

Toward the end of cross-examination, Alaniz requested Officer Smith to produce all of the police investigative reports that contained the above information about Garza's prior drug dealings. Prosecutor Berg

---

1. The applicable statutory provisions are as follows:

21 U.S.C. § 841.
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance
    . . . .

21 U.S.C. § 846.
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

interjected that he would attempt to supply the reports, but expressed doubt about being able to produce reports originating from outside of Texas. At this point, the district judge interrupted to ascertain why Alaniz desired reports concerning Garza's prior drug record, inasmuch as Garza's commission of those acts was not being tried before the court. Alaniz responded that he needed such reports to develop a defense of entrapment for his client and to demonstrate that Garza was not predisposed to commit the offenses for which he was being tried.

At this point, Prosecutor Berg requested the court to excuse the jury. After the jury had left the courtroom, Berg again objected to admission of evidence concerning Garza's prior narcotic trafficking. Berg argued that the evidence was inadmissible hearsay and would not even be relevant until the prosecution had rebutted Garza's defense of entrapment, which Berg claimed that Garza had never affirmatively asserted as a defense. Berg argued to the court that allowing Alaniz to introduce such evidence was prejudicing Garza and was also jeopardizing the prosecution's case.

MR. BERG: Your Honor, for whatever benefit it may be to the defendant at this time, I would like to move that the Court—I don't know how to go about this—but move the Court to instruct the jury to disregard anything about any prior offenses at all that the defendant may or may not have been involved in. It is not fair to the defendant, particularly. I am not just thinking about the defendant —particularly, I am wondering about the Government's case at this point, on appeal. I mean, Mr. Alaniz is just going into things that are totally prejudicial to his client, totally prejudicial to his client, and insists upon going into them.

MR. ALANIZ: May I—

MR. BERG: This has all of the potential in the world of causing the Government, perhaps, at some point, to have to try this case again, at absolutely no fault to the Government, absolutely none, Your Hon-

or, and I don't want to have to do that and waste the Court's time and taxpayers' money in doing that again, because of what's happening here.[2]

Berg's concerns were echoed by codefendant Morisse's trial counsel, who stated that the cross-examination being pursued by Alaniz "just goes to prejudice [Garza], and the more it prejudices [Garza], the more it affects my client." Thereafter, the following colloquy occurred between the prosecution and the district court:

MR. BERG: I don't know what [Alaniz] is doing other than prejudicing his client, and Your Honor mentioned awhile ago that Your Honor was at a loss as to how to control this situation; I can understand that, but I hate to say it, I really do, but I can look down the road and see somebody accusing somebody, some other lawyer coming in and accusing Mr. Alaniz of incompetent counsel here, and if that happens, and if an appellate court were to reverse the case on those grounds, I think it would be a terrible shame because I personally don't think that Mr. Alaniz is incompetent. I know I have tried many cases with Mr. Alaniz. I know him to be a competent attorney. I don't know what is going on here today, but certainly if he were to be declared to be incompetent by the Fifth Circuit, I know that competency to practice ought to be one qualification to practice in Federal Court, and maybe that would be some persuasion to Mr. Alaniz.

THE COURT: Well, I'm going to stay away from that aspect of it, but this has been about as confusing as any case I have ever been involved in. I have never understood what you are trying to do, Mr. Alaniz.[3]

Following the above exchange, codefendant Morisse's counsel moved for a mistrial because of the prejudicial evidence introduced as a result of Alaniz's cross-examination of Officer Smith. The district judge declined to rule on the motion immediately, but did caution Alaniz to "handle yourself

2. R. 6, 422–23.

3. Id. at 431.

. . . differently" or the court would have no choice but to grant a mistrial as to Morisse because of the "slop-over" effect of the evidence. Shortly thereafter, and before the jury was called back in, the court ordered a recess until the following morning.

Before trial continued the following day, Garza and his codefendant Morisse each filed a written motion for a mistrial. After conducting a hearing on the motions out of the presence of the jury, the court ordered that Garza and Morisse's trial be severed and that each be granted a mistrial. At this point, Garza filed a *pro se* motion requesting the discharge of Alaniz as his counsel and seeking appointment of counsel by the court. This motion was also granted and attorney Sam Westergren, Jr., was ultimately appointed to represent Garza.

Shortly thereafter, attorney Westergren filed a motion to dismiss Garza's indictment on the ground of double jeopardy. Garza contended that his first trial resulted in a mistrial because of prosecutorial overreaching. Specifically, he complained that Berg's conduct in accusing his former attorney, Alaniz, of incompetence constituted such overreaching by the prosecution that his request for a mistrial was an involuntary response to Berg's actions, and, therefore, jeopardy attached to the proceedings. The district court denied the motion; from this denial, Garza raises the instant appeal.

## II.

### THE LAW

Initially, we note that this court has jurisdiction of Garza's appeal pursuant to 28 U.S.C. § 1291. The district court's denial of the motion to dismiss on double jeopardy grounds is an appealable "final order" within the meaning of § 1291. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *United States v. Tammaro*, 636 F.2d 100, 103 (5th Cir. 1981). "Therefore, the denial of [Garza's] motion to dismiss the indictment and the issue of prosecutorial overreaching, inasmuch as it relates to the double jeopardy question, are reviewable by this Court."

*United States v. Wright*, 622 F.2d 792, 793 (5th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980).

As a general rule, a mistrial granted upon a defendant's request or with his approval does not bar reprosecution because the defendant is exercising his discretion and choosing "between taking a flawed case to the jury or risking retrial." *Id.* at 794. Reprosecution is barred, however, if the defendant is deprived of the choice and involuntarily forced to move for a mistrial due to prosecutorial overreaching. *Id.* at 795; *United States v. Westhoff*, 653 F.2d 1047, 1049 (5th Cir. 1981). Prosecutorial overreaching has been defined as "gross negligence or intentional misconduct"; it is any prosecutorial error that seriously prejudices a defendant and causes him reasonably to conclude that continuation of the tainted proceeding would result in his conviction. *United States v. Dinitz*, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1975); *Baker v. Metcalf*, 633 F.2d 1198, 1201 (5th Cir.), *cert. denied*, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981); *United States v. Kessler*, 530 F.2d 1246, 1256 (5th Cir. 1976).

## III.

### DOUBLE JEOPARDY?

Garza contends that Prosecutor Berg's conduct in accusing his retained counsel, Nago Alaniz, of incompetence constituted such overreaching that jeopardy attached to the proceedings which resulted in a mistrial. Garza argues that double jeopardy bars reprosecution even though he moved for a mistrial because his request was not an act of discretion, but rather an involuntary reaction to the conduct of Berg.

In support of his argument, Garza contends that his former attorney was pursuing a reasonable trial strategy in cross-examining Officer Smith about Garza's prior drug dealings. Garza suggests that Alaniz was merely trying "to take the sting out" of adverse evidence that the prosecution would have introduced to rebut Garza's defense of entrapment. Moreover, Garza con-

tends that Prosecutor Berg conceded at one point during the proceedings that he himself had intended to introduce evidence concerning Garza's former reputation as a narcotics dealer.[4] Despite such a concession, Garza argues, Berg launched an attack on Alaniz's attempts to introduce the same type of evidence.

In his brief on this appeal, Garza suggests that Prosecutor Berg was attempting to second-guess Alaniz's trial strategy and that Berg's attack on Alaniz was intentionally designed to disrupt that strategy. Garza implies that Berg's remarks[5] were also designed to cause him to lose confidence in his attorney so that he would request a mistrial. Garza repeatedly points out that Berg's comments were made "in open court" in his presence.

We disagree with Garza's contention that Berg's actions amounted to the "type of bad faith conduct contemplated by the Supreme Court when it coined the phrase 'prosecutorial overreaching.'" *United States v. Wright*, 622 F.2d at 795. First, we do not find that Berg's remarks were designed solely, if at all, to cause Garza to lose confidence in his attorney. Apart from the question whether Berg, as he maintained, was concerned with the prejudice that Alaniz's cross-examination of Officer Smith was causing Garza, we think that Berg had a legitimate reason of his own for objecting to Alaniz's line of inquiry. Berg appeared genuinely to be concerned that the police reports concerning Garza's prior drug trafficking were inadmissible hearsay. Berg informed the trial court that insofar as no proper predicate had been laid for the admission of such evidence, introduction of it might cause the government to suffer a reversal on appeal, assuming a conviction were obtained.

Second, and importantly, we note that the remarks made by Berg and complained of by Garza were all made out of the presence of the jury. Indeed, Berg requested the trial court to excuse the jury before he elaborated on his objection to Alaniz's cross-examination of Officer Smith. The only objections made by Berg in the presence of the jury were for failure to lay a proper predicate for the admission of police reports and for lack of relevance. Berg did not explain the basis of these objections until the jury had left the courtroom.

Likewise, none of Berg's comments concerning Alaniz's competence as an attorney or the prejudicial character of Alaniz's cross-examination of Smith were ever heard by the jury. The jury had already been excused at this point, so that it appears impossible that Berg's remarks could have intentionally been designed to force Garza to request a mistrial and thereby forego his valued right to be tried by a particular jury. As this court has stated, "In analyzing the prosecutor's actions here, we look only to those heard or observed by the jury, that is, those actions that tainted or prejudiced the jury as to have forced the defendants to forego their right to go to that jury 'and, perhaps, end the dispute then and there with an acquittal.'" *United States v. Fine*, 644 F.2d 1018, 1022 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981), *quoting United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971).[6]

Thus, the record reflects that Prosecutor Berg never made his allegedly "overreaching" remarks in the hearing of the jury. As a result, we must conclude that Garza did not request a mistrial as an involuntary response to Berg's comments, but rather exercised his own discretion and re-

---

**4.** Even assuming that Berg made such a concession, which is not at all clear from our reading of the record, it is doubtful that the prosecution could have introduced such evidence to show any predisposition on Garza's part to sell cocaine. *See United States v. Webster*, 649 F.2d 346, 350 (5th Cir. 1981).

**5.** See text accompanying notes 2 & 3, *supra*.

**6.** The *Fine* court continued its analysis in a footnote, stating that "[h]owever egregious may be such out-of-court actions, however closely they may skirt the edge of overreaching, they could supply no basis for dismissing [an indictment on the grounds of double jeopardy] unless they somehow affected the trial." 644 F.2d at 1022 n.11.

quested a mistrial because of the prejudicial hearsay evidence of his past drug dealings admitted through his own counsel's cross-examination of Officer Smith.

The ruling of the district court denying the motion to dismiss was correct.

AFFIRMED.