**Mitchell MERRIWEATHER, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–958.**

District of Columbia Court of Appeals.

Argued July 7, 1983.

Decided Sept. 15, 1983.

Susan Schneider, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., was on briefs, for appellant. Linda Jacobson, Public Defender Service, Washington, D.C., also entered an appearance for appellant.

Thomas P. Murphy, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and Cary M. Feldman, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, KERN, Associate Judge, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

Under a Supreme Court holding that a pretrial order denying a dismissal motion predicated on a claim of double jeopardy is appealable,[1] a defendant who had successfully moved for mistrial after the government had rested its case in a murder trial, has appealed to this court from an order of a second trial judge rejecting his contention that a retrial on the same indictment[2] would subject him to double jeopardy.

The return of this indictment stemmed from an investigation of a fatal shooting affray which occurred in daylight on the public streets of the city. One afternoon in 1980, four young men from Alexandria, Virginia, some of whom were apparently habitual users of heroin, drove into the district and parked near the corner of Ninth and O Streets—an area known to be frequented by vendors of narcotics. After offering money to one of the bystanders to bring drugs to the car, two of the Alexandrians left the car to go to a nearby alley. While they were gone, two local men, the brothers Leon and Mitchell Merriweather, forced their way into the parked car and attempted to rob the two occupants at gunpoint. One of the Alexandrians, William Schumacher, returned, started to interfere with the robbery, at which time one of the brothers fired his gun and wounded not only Schumacher, but one of his companions in the car, who ultimately died of the wounds. Hearing the shots, the other Alexandrian, Timothy Garner, rushed back to the car and grappled with the robbers. Appellant retorted by beating him over the head with a pistol. In the ensuring struggle, the pistol discharged, the shot inflicting a fatal wound upon appellant's brother, Leon. Appellant then pulled his wounded brother into another car parked close-by, and headed for a hospital. Almost immediately, the Alexandria car, with its complement of dying and wounded passengers, was driven away, so that when the police arrived, none of the participants in the fray were on the scene. The officers canvassed the neighborhood for witnesses, interviewed several persons, including one Michelle Parker who had been in the vicinity to buy drugs, heard gunshots, and observed the robbery. Her account of the incident given in direct testimony at the trial was substantially the same as the version given by the three surviving Alexandrians.[3]

It was the circumstances under which the government called this witness to the stand

---

1. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Prior to this decision, rulings against defendants on such motions were generally regarded as not appealable as finality did not attach until and unless the second trial resulted in a judgment of conviction and sentence. In contradistinction an order dismissing an indictment was appealable by the government, for unlike a mistrial ruling, such an order, unless reversed on appeal, puts an end to the prosecution. *See United States v. Sedgwick,* 345 A.2d 465 (D.C.1975), *cert. denied,* 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976).

2. The indictment charged appellant with two *counts of felony murder* committed in the course of a robbery, D.C.Code § 22–2401 (1981); four counts of attempted robbery while armed, D.C.Code §§ 22–2901, –3202 (1981); mayhem and malicious disfigurement while armed, D.C.Code §§ 22–506, –3202 (1981); and carrying a pistol without a license, D.C.Code § 22–3201 (1981).

3. The foregoing summary is based on the testimony presented by the government at trial, which also included forensic evidence that a pistol found by police in the car driven by appellant was the weapon fired at the occupants of the Virginia car. The only conflicting testimony was provided by a witness called by appellant before the trial was aborted. She testified that looking down from her third floor window, she had seen Leon Merriweather learning into the Alexandria car and that the shot which killed him came from inside that vehicle.

which formed the basis of appellant's motion for mistrial. Before the trial began, defense counsel had requested a list of all the government witnesses, and such information about them as drug usage, prior convictions, and whether or not they had ever served as police informants. Before the jury was impaneled the government did supply the names of such witnesses and some data about them but did not mention the name of Mrs. Parker, until after the other prosecution witnesses had testified.

When notified that Mrs. Parker was about to be called, defense counsel renewed the request for record of convictions and informant status. In response, the government stated that it believed she had once been convicted for a violation of the Dangerous Drug Act. Following the completion of her testimony, the trial proceeded, the government rested and the defense called a witness.

Meanwhile, a defense investigator examined the Superior Court jacket relating to the Parker conviction and discovered an order that sealed the sentencing proceedings. After counsel brought this to the attention of the court, it was revealed that the witness had become a paid informant of a narcotics detective some two months after the events about which she testified at the Merriweather trial. The prosecutor said that he had only just learned of this since his pretrial investigation revealed nothing that would have alerted him to the fact that Parker had been or was presently an informant.[4] Her name was intentionally left off the government's witness list, the prosecutor explained, to protect her safety as she lived in close proximity to the scene of the murders. Following these statements, appellant moved for a mistrial.

The trial court commented that the witness' background as a police informant was *Brady*[5] material and hence should have been disclosed, but ruled that since there was no intent on the part of the prosecution to withhold relevant information, the mistrial motion was denied.

Even though armed with this knowledge of Mrs. Parker's career, the defense was reluctant to recall the witness for supplemental cross-examination until given an opportunity for *voir dire* examination. The trial court agreed to excuse the jury and to appoint counsel for the witness, who was then questioned by lawyers on both sides. While admitting she had been an informant, she refused to answer certain questions put to her by appellant's counsel, invoking the privilege against self-incrimination. The defense renewed its motion for mistrial, despite the government's offer to provide the witness with formal statutory immunity if the trial could be recessed for a few days. Over vigorous government objection, the court then reluctantly granted a mistrial.

When a new trial was scheduled, appellant moved to dismiss the indictment on the ground of double jeopardy. A different judge assigned to the case decided to hold an evidentiary hearing at which the Assistant United States Attorney, who acted as prosecutor at the trial, was one of the witnesses. After a four-day hearing and listening to closing arguments by both sides, the trial judge denied the motion to dismiss, making a formal finding that there had been "no deliberate suppression of that information" (*i.e.,* Parker's status as an informant). This was the same conclusion announced by the judge who had presided at the trial.

Notwithstanding this finding of fact by the court denying the motion to dismiss, appellant, in urging reversal, assails the conduct of the prosecutor on the ground that despite the pretrial request for such information he failed to investigate the relationship between the witness Parker and

---

4. According to the government, the homicide detectives who conducted the investigation which led to the grand jury proceedings were ignorant of the witness' official contact with the narcotics squad.

5. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

the police until the defense investigator informed the court of what he had gleaned from inspecting the Superior Court jacket. He also argues that because Parker's presence at the scene of the shooting indicated that she was probably on that particular block to buy or sell drugs herself, the prosecutor should have anticipated invocation of constitutional privilege if asked on cross-examination to explain how she happened to be there. From these premises, appellant contends that this court should overrule the motions judge and declare that these acts of omission on the part of the prosecutor were intended by him to provoke the defendant into moving for mistrial.

In advancing this argument, appellant relies upon *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)—a decision by the Supreme Court reaffirming the well-settled rule that a criminal defendant who successfully elects to move for mistrial, may invoke the bar of double jeopardy against a second trial only where the actions of the prosecutor were *intended* to goad the defense into making such a motion, *id.* at 676, 102 S.Ct. at 2090 (emphasis supplied). In its majority opinion, the court was at pains to emphasize that intent was the crucial factor in such determinations, a showing of such prosecutorial misconduct as "harassment or overreaching even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."[6] *Id.* at 675–676, 102 S.Ct. at 2089, 2090.

In our view, appellant has fallen short of bringing his case within the scope of the exception described in *Oregon v. Kennedy*, supra. It is one thing to show that the prosecutor was palpably negligent in his pretrial investigation of his witnesses, but

to say that such carelessness was part of a deliberate scheme to induce the defense to move for mistrial is a non-sequitur. In the instant case, we are confronted with an explicit finding of the motions court that there was no deliberate suppression of information. As this finding was supported by substantial evidence, we have no authority to set it aside. D.C.Code § 17–305(a) (1981). And since we must accept the finding that the failure of the prosecutor to apprise the defense of the witness Parker's connection with the police was nonintentional, any holding that such conduct demonstrated an intent to provoke a mistrial motion would be utterly without foundation. In its *Kennedy* decision, the Supreme Court held that "since the Oregon trial court found and the Oregon Court of Appeals accepted that the prosecutorial conduct culminating in the termination of the first trial ... was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause." *Oregon v. Kennedy, supra,* 456 U.S. at 679, 102 S.Ct. at 2091. In the case before us, we also think that the finding of the motions court should have ended the double jeopardy issue.[7]

*Affirmed.*

NEWMAN, Chief Judge, concurring:

While I am satisfied that the record in this case does, in fact, show that the prosecutor was *at least* palpably negligent in the pretrial investigation of his witnesses, I agree with the majority that the record does not permit reversal under the strictures of *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

---

**6.** It was the use of such imprecise language in *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) and *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), that prompted Mr. Justice Rehnquist in writing the plurality opinion to clarify the scope of the exception to the general rule

against barring retrial. *Oregon v. Kennedy, supra,* 456 U.S. at 678 n. 8, 102 S.Ct. at 2090 n. 8.

**7.** *See Coleman v. United States,* 414 A.2d 528 (D.C.1980).