Lanzinger, J.,
concurring.
{¶ 41} I concur in the majority opinion, but write separately to address issues concerning the appealability of the denial of a motion to dismiss on double jeopardy grounds, the duty of a trial judge in considering a motion for mistrial like the one in this case, and the technological aspects present here.

Initial Matters

{¶ 42} At the outset, I share the concurring appellate judge’s concern over precedent holding that the denial of a motion to dismiss on double jeopardy grounds is not a final, appealable order. State v. Crago, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990), syllabus. Gunnell’s first trial was in 2005, and she has been unable to appeal the denial of her motion to dismiss on double jeopardy grounds after the second trial, having to wait until the completion of a third trial. In Crago, this court overruled the unanimous opinion in State v. Thomas, 61 Ohio St.2d 254, 400 N.E.2d 897 (1980), in which we held that the overruling of a motion to dismiss on the ground of double jeopardy is a final, appealable order under *453 R.C. 2953.02 and 2505.02. Id. at paragraph one of the syllabus. We stated in Thomas:
It is clear that the Double Jeopardy Clause is a guarantee against being twice put to trial for the same offense. Abney v. United States (1977), 431 U.S. 651, 661, 97 S.Ct. 2034, 52 L.Ed.2d 651. It is equally clear that an order affecting a right of constitutional dimensions is an “order affecting a substantial right,” within the contemplation of R.C. 2505.02. It would seem reasonable to conclude that some form of review prior to judgment is necessary to preserve this right. Id. at page 660.
We believe that a proceeding on a motion to dismiss for double jeopardy should be considered a special proceeding as well. A claim of double jeopardy raises an issue entirely collateral to the guilt or innocence of the defendant. While it is a complete defense, it is more than that, for it, in principle, bars a new trial as well as a new conviction. Additionally, an erroneous decision on a double jeopardy claim cannot be effectively reviewed after judgment within the second trial; by that time, the defendant’s right has been violated.
We hold, therefore, that the overruling of a motion to dismiss on the ground of double jeopardy is a final appealable order under R.C. 2953.02 and 2505.02. Owens v. Campbell [(1971)], 27 Ohio St.2d 264, 272 N.E.2d 116, is hereby overruled.
Thomas at 258.

A Shifted Burden

{¶ 43} When a defendant objects to a mistrial, as Gunnell did in this case, the government must bear the burden of demonstrating manifest necessity for the mistrial. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (“in view of the importance of the right [of a defendant to have the trial concluded by a particular tribunal], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if [the prosecutor] is to avoid the double jeopardy bar”).
{¶ 44} The decision to declare a mistrial is one of last resort, and courts should be careful to exhaust all other alternatives before taking this extraordinary step. Other things may be done to obviate misconduct, such as giving supplemental jury instructions or reducing the size of the jury panel by agreement of the parties. Furthermore, while it did not do so at the time, Crim.R. 24(G)(1) now *454 permits the substitution of alternate jurors in noncapital criminal cases. (See former Crim.R. 24(G)(1), 109 Ohio St.3d CXXII, effective July 1, 2006, requiring that an alternate juror who has not replaced a regular juror be discharged when the jury retires to consider its verdict.)
{¶ 45} There is no evidence in the record that the jurors were given specific warning that the Internet was off limits during the progress of the trial. While the record in this appeal does not include a transcript of the jury instructions from the second trial, the court’s entry declaring a mistrial quotes portions of the instructions, which are merely general, directing the jury to rely only on testimony and evidence presented in court and to refrain from discussing the case. Before the voir dire in this case, the court stated:
It’s also critical that if you are selected as a juror in this case and you get to the point where you’re deliberating, that during your deliberations * * * you only consider the evidence that’s presented to you in the courtroom during the course of this trial. And that’s absolutely critical in order for there to be a fair trial to both sides. It wouldn’t be fair to either side if jurors were in the jury room deliberating and talking about issues or facts that were not addressed during the course of the trial. For one, they may not be factual. They may not be facts. And two, the attorneys may or may not be aware of those things, and, therefore, wouldn’t be able to incorporate those things into their arguments. So it is critical that you, from this point on, limit the information that you take in with respect to this case to that which is presented to you in the courtroom. And I think that you all have a pretty good understanding and idea of the importance of — of that concept.
(Emphasis sic.)
{¶ 46} After the jury had been seated and opening statements had been given, the court told the jury, “It’s absolutely critical that from this point on, the only exposure you have to this case is from what transpires here in the courtroom.” As part of the jury instructions, the court stated:
It is now the duty of the Court to instruct you on the law which applies to this case. The Court and the jury have separate functions. You decide the disputed facts and the Court gives the instructions of law. It is your sworn duty to accept these instructions and to apply the law as it is given to you. You may neither change the law nor apply your own idea of what you think the law should be.
*455 * * *
It is your duty to weigh the evidence, decide the disputed questions of fact, apply the instructions of law to your findings, and render your verdict accordingly.
(Emphasis added.)
{¶ 47} Based on the trial court’s entry, it appears that while the court’s instructions clearly stated that jurors were to consider only evidence presented at trial, the instructions were more vague regarding whether jurors were forbidden to consult outside sources such as the Internet or new technology to assist them in applying the court’s instructions of law to their findings of fact. Several legal commentators have noted that juror research of this type is a great concern in this age of new media.[3] As the juror herself noted, “everybody kept asking what the word ‘perverse’ was, and I just wanted to look it up for myself to see exactly what it meant.”
{¶ 48} The prevalent and expanding nature of new media presents trial courts with the challenge of instructing jurors regarding technology that has become an everyday part of their lives. In this case, it was only after the court had decided to declare a mistrial that the trial court informed the jurors that they were to rely only on the jury instructions and their personal knowledge to define words:
When there’s no specific definition for a word or a term, I’m not allowed to give you my idea of what I think it is.
If it’s not spelled out as a legal definition in the Ohio Jury Instructions, then you’re simply to come up with an understanding of that term. The collective body is to come up with a collective understanding of what that term means.
{¶ 49} Based upon the information given to the jury, the trial court’s reasoning that the juror had willfully violated the court’s order and would continue to violate it was speculative at best.

Abuse-of-Discretion Standard

{¶ 50} According to the record, the jury had asked the court for the definition of “perverse” during deliberations, but was not given a response. The next morning, the juror who allegedly committed misconduct brought two items with *456 her to the courthouse. One was a written definition of the term “perverse” that she intended to share with the jurors. The other was a printout containing a hypothetical example of involuntary manslaughter, which the juror admitted she had printed off the Internet. She told the judge that she had not discussed these items with anyone. When the judge asked her why she felt that she needed these materials, she responded, “I was at home. I was on the computer, and I just — I did not get much sleep last night, and I just — that was mainly for myself. I just wanted to have it clear in my own head.”
{¶ 51} The parties declined to question the juror and initially told the judge that a curative instruction would be sufficient.
{¶ 52} It is an abuse of discretion to make findings that are unsupported by the record. At the very least, the court should have inquired about the juror’s ability to put aside the improper information and should have questioned the other jurors to see if they were affected by the improper information. As the situation in the third trial showed, more can and should be done. In the third trial during deliberations, the jurors had examined an exhibit that should not have been given to them. Defense counsel moved for a mistrial. The court examined the jurors individually to determine whether they were capable of continuing fair and unbiased deliberations despite the fact that they had all seen the inadvertently included exhibit. When the questioning was completed, and every juror stated that he or she could disregard the exhibit and resume impartial deliberations, the court allowed deliberations to continue on the basis that this situation was “significantly different” from the situation involving the juror in the second trial. The court noted that “the difference here is that I have the utmost confidence in this jury and their ability to follow instructions.” The court determined this based upon having questioned the jurors and evaluated “their appearance, their demeanor, the manner in which they were responding to my questions[,] [t]he reasonableness of their responses, their attentiveness, their frankness, * * * their intelligence, their comprehension of the situation, together with all the facts and circumstances surrounding the case.” It is of concern that the trial court would go to such great lengths to determine whether deliberations should continue in the third trial, but failed to even question the juror in the second trial regarding her ability to continue deliberations. '
{¶ 53} We have noted that “[i]n cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror.” State v. Phillips, 74 Ohio St.3d 72, 89, 656 N.E.2d 643 (1995). However, we have also held that “[w]hen a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror.” Id. at 88. Similarly, when a trial court learns that a juror has *457 improperly reviewed outside information, the court has a duty to hold a hearing to determine whether the juror has become biased. The trial court abused its discretion in declaring a mistrial in the second trial without conducting a hearing with the juror on the question of bias and further examining the other jurors.
{¶ 54} Mindful that “manifest necessity” is a standard that cannot be applied mechanically or without attention to the particular problem confronting the trial judge, Arizona, v. Washington, 434 U.S. at 506, 98 S.Ct. 824, 54 L.Ed.2d 717, I concur that the state did not meet the heavy burden of demonstrating manifest necessity for a mistrial in the second trial.
McGee Brown, J., concurring.
{¶ 55} I concur with Justice Lanzinger on the need to review our decision in State v. Crago, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990), on whether the overruling of a motion to dismiss on double jeopardy grounds is a final, appeal-able order.

. See, e.g., Hoffmeister, Google, Gadgets, and Guilt: Juror Misconduct in the Digital Age, 83 U.Colo.L.Rev. 409, 419-425 (2012); Artigliere, Barton & Hahn, Reining in Juror Misconduct: Practical Suggestions for Judges and Lawyers, 84 Fla.Bar J. 8-10 (Jan.2010).