**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

v.

SAMMY WAYNE DAVIS,

        Defendant–Appellant.

No. 13-7044
(D.C. No. 6:13-CR-00019-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **BACHARACH**, Circuit Judges.

Sammy Wayne Davis appeals the district court's order denying his motion to

dismiss on double jeopardy grounds. Exercising jurisdiction under 28 U.S.C. § 1291, see

Abney v. United States, 431 U.S. 651, 662 (1977), we affirm.

**I**

A search warrant was executed on Mr. Davis' home in June 2011. Based on the

evidence seized pursuant to the warrant, Mr. Davis was charged in a five-count

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

superseding indictment with possession of a firearm by a felon, manufacture of methamphetamine, manufacture of methamphetamine on premises where children are present or reside, possession of methamphetamine with the intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. Mr. Davis' wife, Cassie Davis, was at home with him at the time the search warrant was executed, and she was initially charged as well. However, after Ms. Davis testified in front of the grand jury about Mr. Davis' possession of the firearm, the charges against her were dropped.

Ms. Davis was the fourth witness to testify at Mr. Davis' trial. Ms. Davis testified that she had seen Mr. Davis with the firearm on two occasions. Her testimony also implicated Mr. Davis in the manufacture, possession, and sale of methamphetamine. The government elicited testimony from Ms. Davis that she had a history of drug use and that the charges against her had been dropped after she initially testified against her husband.

During cross-examination of Ms. Davis, defense counsel attempted to highlight discrepancies between her grand jury testimony and her testimony at trial. After a discussion of the dismissal of the charges against her, the following exchange took place:

> Q: Has—so you don't know why your case got dismissed down in Choctaw County?
>     [Prosecutor]:         Objection, Your Honor. Cumulative.
>     [Defense Counsel]: Well—
>     The Court:          Sustained.
>     [Defense Counsel]: Okay.
> Q (By [Defense Counsel]): It wasn't just rid of Sammy that you got, was it?
>     [Prosecutor]:         Objection, Your Honor. Cumulative.
>     The Court:          Sustained.
> Q (By [Defense Counsel]): It wasn't just the case you got dismissed, was it?

```
The Court:          Sustained.
[Prosecutor]:       Thank you.
The Court:          Mr. [Defense Counsel].
Q (By [Defense Counsel]): But now you got to live with a sex offender out
of Hugo, don't you?
[Prosecutor]:       Your Honor, I object.  That's totally improper.
```

The court immediately instructed the attorneys to approach the bench, where the prosecution moved for sanctions against defense counsel and stated that the government was "contemplating a mistrial motion."  Defense counsel countered that the "theory of [his] defense [was] that Ms. Davis wanted to get rid of Mr. Davis . . . to be with someone else," and that Ms. Davis had even "lost her kids because of her living with the sex offender."  The court excused the jury for a break in order to hear arguments from the attorneys, then stated that a mistrial would be granted because the judge did not believe he could "admonish the jury without, in effect, throwing a skunk in the jury box and telling them not to smell it."

After defense counsel raised double jeopardy concerns, the court agreed to send the jury home for the evening and to return for additional arguments, and possibly resumption of the trial, the next morning.  In the morning, the court considered further oral arguments from both parties and a brief submitted by defense counsel.  The trial judge determined that "manifest necessity" required a mistrial, though he expressly did not "think there was bad faith on behalf of the defender."

Mr. Davis proceeded to file a motion to dismiss the superseding indictment on double jeopardy grounds.  That motion was denied.  Mr. Davis appeals.

## II

The Constitution dictates that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "[J]eopardy attaches when the jury is empaneled and sworn," as a defendant has a "valued right to have his trial completed by a particular tribunal." Crist v. Bretz, 437 U.S. 28, 35-36 (1978) (quotation omitted). That right, however, "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Walck v. Edmondson, 472 F.3d 1227, 1235-36 (10th Cir. 2007) (quotation omitted). Nonetheless, because a mistrial can frustrate the defendant's rights, if a defendant objects, the prosecution must demonstrate "manifest necessity" for a mistrial. Id. at 1236.

We review the trial court's decision to grant a mistrial for an abuse of discretion. See United States v. Powell, 982 F.2d 1422, 1429 (10th Cir. 1992). A "high degree" of necessity is required for a mistrial to be deemed appropriate. Arizona v. Washington, 434 U.S. 497, 506 (1978). The Supreme Court, however, has stated that when a defense attorney allegedly "made improper and prejudicial remarks," the "difficulty which led to the mistrial . . . falls in an area where the trial judge's determination is entitled to special respect." Id. at 510. "[T]he Supreme Court has refused to adopt a mechanistic formula for the presence of 'manifest necessity,'" Walck, 472 F.3d at 1236, and the district court is not required to "articulate on the record all the factors which informed the deliberate exercise of [its] discretion," Renico v. Lett, 559 U.S. 766, 775 (2010) (quotation omitted).

At trial, the judge repeatedly stated that defense counsel's question— "But now

- 4 -

you got to live with a sex offender out of Hugo, don't you?"—"ha[d] nothing to do with" the defense theory of the case and expressed great concern that, even if it were relevant, it unfairly prejudiced the jury.[1] The judge found the question to be "incredibly prejudicial in the context in which it was made." He indicated several times in his oral ruling, and the written order memorializing it, that the damage could not be undone. Recognizing that a "mistrial is a drastic remedy," he nonetheless concluded that it was manifestly necessary.

The record reflects that the district court judge was conscientious and measured in his consideration of the prosecution's motion for a mistrial. "[I]f a trial judge acts irrationally or irresponsibly [in granting a mistrial] his actions cannot be condoned. But our review of this record indicates that this was not such a case." Washington, 434 U.S. at 514 (citation omitted). The district court judge did not act "during the heat of the trial confrontation," Walck, 472 F.3d at 1236 n.5 (quotation omitted), but continued to

_____

[1] Mr. Davis continues to contend that the question was appropriate and would have elicited relevant testimony regarding Ms. Davis' failure to regain custody of her children. Mr. Davis, however, has failed to cite any authorities supporting his claim that Ms. Davis may have been denied custody as a result of living with a sex offender. Cf. Washington, 434 U.S. at 511 (starting "from the premise that defense counsel's comment was improper and may have affected the impartiality of the jury" because respondent failed to proffer any relevant "precedent supportive of his contention"). In oral argument before this court, counsel for Mr. Davis asserted without citation that the restriction was a consequence of standard sex offender rules and conditions. Yet Mr. Davis' brief below stated that the referenced sex offender was convicted in 1991 of first degree rape, and Oklahoma law provides only that it "shall be unlawful for any person who is required to register pursuant to the Sex Offenders Registration Act for any offense in which a minor child was the victim to reside with a minor child or establish any other living accommodation where a minor child resides." Okla. Stat. tit. 57, § 590 (emphasis added).

consider the issue through the next morning in light of extensive arguments and briefing. He expressly evaluated the possibility of admonishing the jury, see id. at 1240, before ruling that a mistrial was the only way to rectify defense counsel's conduct. Additionally, the judge's determination was based on his assessment of the demeanor of the participants and the atmosphere at trial, issues that "are not amenable to strict appellate review." Id. at 1236 n.5. In Washington, the Court instructed that "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." 434 U.S. at 511. According that respect in the present matter, our review of the cold record compels us to affirm.

## III

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge