IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,799

STATE OF KANSAS,
*Appellee*,

v.

KING PHILLIP AMMAN REU-EL,
f/k/a PHILLIP CHEATHAM,
*Appellant*.


SYLLABUS BY THE COURT


1.

A district court has discretion under K.S.A. 2016 Supp. 22-3210(d)(1) to grant a motion to withdraw a guilty or no contest plea for good cause. Accordingly, appellate courts review a district court's decision to deny a presentence motion to withdraw a plea, including the underlying conclusion that the defendant has not established good cause, for an abuse of discretion. This generally means that the district court's decision is protected if reasonable persons could differ upon the propriety of the decision, as long as the discretionary decision is made within and takes into account the applicable legal standards. Applying an abuse of discretion standard does not involve reweighing evidence or assessing witness credibility.


2.

Factors a district court should consider in determining whether a defendant has established good cause to withdraw a plea include, but are not limited to, whether (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced,

1

mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.

3.

If a court fails to inform a defendant of the consequences of a plea, the error can be deemed harmless and the plea need not be set aside if, upon review of the entire record, the purpose of K.S.A. 2016 Supp. 22-3210(a)(2) is otherwise served—*i.e.*, if a defendant is advised of the plea's consequences in a written plea agreement, by defense counsel, or in some other way. Similarly, if the written plea agreement or defense counsel fails to advise the defendant of the consequences, a judge's compliance with the requirements of K.S.A. 2016 Supp. 22-3210(a)(2) can remedy those failures.

4.

A court considering a motion to withdraw a plea should look at the entire plea process—the written plea agreement, if any, counsel's advice, and the plea colloquy—to see whether, when all aspects are considered, the defendant understands the nature and consequences of a plea.

5.

Under K.S.A. 2016 Supp. 22-3602(a), a no contest plea waives a defendant's right to appeal the judgment of conviction, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507.

6.

The requirement that a plea must be made understandingly does not mean the district court must list for an accused all the rulings that preceded a plea and specifically state there is no right to appeal those rulings.

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed May 26, 2017. Affirmed.

*Meryl Carver-Allmond,* of Capital Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  To withdraw a no contest plea before sentencing, a defendant must establish good cause for doing so. Here, King Phillip Amman Reu-El, formerly known as Phillip Cheatham, contends he met the good-cause burden by showing he was misinformed about how his no contest plea might affect his ability to pursue double jeopardy arguments on appeal. In turn, he argues, this means his plea was not knowingly entered. The district court determined Amman Reu-El had not established good cause, and it denied Amman Reu-El's motion to withdraw his plea.

We affirm. The record does not demonstrate that the district court abused its discretion in ruling Amman Reu-El had no basis to claim, after the fact, that he did not understand how the plea impacted his appellate rights.

3

We have previously considered an appeal in this case, which arises from the shooting deaths of two Topeka women and the severe wounding of another. The first appeal arose after a jury convicted Amman Reu-El on six counts: capital murder; in the alternative, two counts of premeditated first-degree murder; attempted murder; aggravated battery; and criminal possession of a firearm. The jury's unanimous decisions during the penalty phase led the district court to impose the death penalty for the capital murder conviction, plus 285 months for attempted murder, 43 months for aggravated battery, and 9 months for the criminal possession of a firearm, all to be served consecutively.

Amman Reu-El appealed, alleging violations of his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. We granted his motion for temporary remand to the district court for a hearing on his claims, pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). After the case returned to us, we unanimously concluded Amman Reu-El's trial counsel's performance in the guilt phase was deficient. Accordingly, we reversed Amman Reu-El's convictions and remanded the case. See *State v. Cheatham*, 296 Kan. 417, 428, 432-37, 439-55, 292 P.3d 318 (2013); see also *In re Hawver*, 300 Kan. 1023, 339 P.3d 573 (2014) (disbarring trial counsel due to his performance in Amman Reu-El's trial).

*Proceedings after remand*

On remand, Amman Reu-El's appointed counsel filed approximately 65 pretrial motions; Amman Reu-El, acting pro se, filed numerous additional motions in which he repeatedly challenged whether he could be retried at all. He generally contended the

district court lacked jurisdiction; he received ineffective assistance of counsel; and retrial was improper because of due process, speedy trial, and double jeopardy concerns. Regarding double jeopardy, Amman Reu-El alleged two violations: First, the State was precluded from trying him again on capital murder and attempted murder charges after this court reversed the first trial convictions; and second, the State was wrongfully trying to use a 1994 manslaughter conviction as an aggravating factor for capital punishment and as support for his unlawful possession of a firearm charge. The district court rejected Amman Reu-El's pro se arguments and explained, *inter alia*, that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution did not prevent the State from retrying a defendant if a conviction is reversed on grounds unrelated to guilt or innocence and it also did not prevent the State from using a prior conviction as a predicate element of the crime of criminal possession of a firearm.

Nevertheless, Amman Reu-El continued to assert these double jeopardy arguments during the pretrial proceedings. In his later arguments, he added a new contention: "[I]f according to *Abney* [*v.*] *United States*, [431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977)], . . . this Court chooses to deny my double jeopardy claim" then "you cannot take me back to trial before the Kansas Supreme Court or the United States Supreme Court has an opportunity to review these matters." A brief discussion of *Abney*'s holding and rationale helps explain the proceedings that occurred from that point in Amman Reu-El's case.

In *Abney*, the United States Supreme Court considered the procedural avenues available to a defendant who raised a due process defense in federal court—specifically, whether a defendant could immediately appeal a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds. 431 U.S. at 653. The United States Supreme Court first recognized there is no constitutional right to appeal; consequently, if

5

a right to appeal exists, that right must be granted by statute. 431 U.S. at 656. The Court then examined the federal statute governing the right to appeal criminal cases in federal courts and noted that the statute generally requires a final decision before an appeal could proceed. 431 U.S. at 656-67. Under that general rule, a defendant facing a second trial could not appeal a pretrial—*i.e.*, a nonfinal—ruling on double jeopardy. But the Court noted it had interpreted the federal appeals statute to include an exception to the finality requirement for collateral orders. And, after extensive discussion, the Court concluded the collateral orders exception applied to pretrial orders rejecting a double jeopardy claim. 431 U.S. at 657-62. In part, the Court reasoned such an exception should apply because the protections guaranteed by the Double Jeopardy Clause

> "would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." 431 U.S. at 662.

This quotation became the focal point for Amman Reu-El's arguments, as he wanted an appellate court to immediately consider and rule on whether he could be retried before that retrial actually took place. But the district court refused to extend *Abney*'s holding, which related to the federal statute only and did not dictate the way in which Kansas courts apply the Kansas statute that governs criminal appeals. See *State v. Fisher,* 2 Kan. App. 2d 353, 579 P.2d 167, *rev. denied* 225 Kan. 846 (1978) (distinguishing wording of Kansas statute allowing appeals of criminal cases from federal statute at issue in *Abney* and holding *Abney*'s rationale could not be extended under Kansas law); see also *State v. Webb*, 52 Kan. App. 2d 891, 896-98, 378 P.3d 1107 (2016)

6

(decided after the district court proceedings in this case but reaffirming *Fisher*'s holding and, once again, refusing to extend *Abney* to allow the direct appeal of a pretrial motion rejecting a double jeopardy defense). *Cf. In re Berkowitz*, 3 Kan. App. 2d 726, 728, 602 P.2d 99 (1979) (recognizing Kansas law did not allow a direct appeal of a pretrial double jeopardy ruling but holding the ruling could be properly challenged through a habeas corpus action, even before final judgment).

Just a few weeks before Amman Reu-El's second jury trial was scheduled to begin in district court, he filed a pro se habeas corpus action with this court. He challenged the district court's jurisdiction and argued that retrial would violate his right to a fair trial, his right to effective assistance of counsel, and the prohibition against double jeopardy. Meanwhile, in district court, Amman Reu-El's counsel asked the district court to stay the jury trial pending resolution of the habeas action. The district court denied the request, and the case proceeded to trial.

After jury selection began, the district court conducted a hearing outside the presence of the jury on a number of issues. Once again, Amman Reu-El asserted the district court lacked jurisdiction to move forward because of his double jeopardy claims and his pending habeas action. The district court noted that Amman Reu-El had "made a really good record" as to his double jeopardy objections, which the court had repeatedly considered and rejected. The court did so again.

Double jeopardy became an issue later during the same hearing when the court considered Amman Reu-El's request to dismiss his attorneys. Outside the State's presence, one of Amman Reu-El's attorneys explained that Amman Reu-El wanted new counsel because he disagreed with his current counsels' collective assessment that his double jeopardy arguments had no merit and that he had no right under Kansas law to

7

immediately appeal the district court's denial of his double jeopardy claims. Amman Reu-El then addressed the court. After acknowledging the district court's repeated rulings on his double jeopardy arguments, Amman Reu-El cited *Abney* and insisted the district court had lost jurisdiction after he had requested the appellate courts to review his double jeopardy claims. The district court engaged in a lengthy colloquy with Amman Reu-El about this argument. Ultimately, the district court offered Amman Reu-El the option of representing himself but refused to appoint new counsel. The case proceeded without a change in counsel.

One week later, Amman Reu-El signed a plea agreement in which he agreed to plead no contest to capital murder and attempted murder and the State agreed to dismiss the remaining charges. The State also agreed it would not pursue the death penalty. Significant to the issue Amman Reu-El presents in this appeal, the written plea agreement included a recognition of the limited appellate rights Amman Reu-El would retain:

> "I understand that by entering this plea I am waiving my right to appeal on any issue other than jurisdiction of the Court or whether the sentence exceeds that permitted by law, and I further agree waiving my rights to appeal is and has been a part of the consideration for the favorable terms of this plea agreement."

The district court conducted a plea colloquy later that same day. It began by cautioning Amman Reu-El it would be asking "a lot of questions," and it instructed Amman Reu-El to let the court know if he did not understand a question or needed to speak with his lawyers. "The purpose for this inquiry," the district court explained, "is to make sure that you understand the charges, the penalties you face if convicted, you understand the significance of giving up your right to trial, as well as [any] [e]ffect upon other legal rights you may have."

8

We will discuss more of the plea colloquy in our analysis; suffice it to say, at this point, the district court found Amman Reu-El's plea was made freely and voluntarily, with advice of counsel, and after reviewing and signing a written plea agreement. It also found Amman Reu-El was competent, satisfied with counsel, and understood the charges against him, the possible penalties, the legal rights affected by the plea, and the rights waived. The district court concluded there was a sufficient factual basis to support findings of guilt on the two charges, and, accordingly, it accepted Amman Reu-El's no contest plea and adjudged him guilty of capital murder and attempted murder. It then dismissed the remaining charges with prejudice.

Less than a week later, Amman Reu-El filed a pro se motion to arrest judgment and to withdraw his plea. He asserted he had the requisite good cause to withdraw his plea, as he was contesting the district court's jurisdiction. Of relevance to the instant appeal, Amman Reu-El's motion asserted a double jeopardy issue:

> "I am told by my Counsel that this is not Double Jeopardy, I am told by this Court that I don't have the Right to Appeal the denial of my Double Jeopardy Claim before a Trial starts, that I could not Fire my Counsel who openly admits his Allegiance, Loyalty or OBLIGATION is to the Court, I could not receive a Continuance or a Stay of the Proceedings to have the Kansas Supreme Court hold a hearing [on my habeas corpus petition] . . . ."

Amman Reu-El concluded by arguing he was "under 'coercive control' and under Duress when [he] entered the NO-CONTEST plea."

Amman Reu-El repeated his arguments a week later, when he filed an "Affidavit of Truth in Support of Judicial Complaint against Presiding Judge." Of particular note, he contended he "felt compelled" to enter a no contest plea after his attorney said, "I don't

9

want to see you die"; he also accused the district court judge of acting as prosecutor and judge by arguing against the double jeopardy defense.

The district court addressed Amman Reu-El's post-plea filings during the already-scheduled sentencing hearing. Defense counsel deferred to Amman Reu-El to present his motions.

After inquiry by the district court regarding Amman Reu-El's motion to arrest judgment, Amman Reu-El confirmed he was asserting the same double jeopardy claims he had previously made. Amman Reu-El indicated he still believed from "my reading of *Abney* . . . , that prior to the proceeding of trial even beginning, a higher court is supposed to hear or then determine whether . . . . [the district court was] right or wrong, before this jeopardy is attached again."

In response, the district court acknowledged that Amman Reu-El had double jeopardy arguments pending before the Supreme Court through the habeas action. The district court also noted the arguments were "preserved for any appeal on the jurisdictional grounds as well that you would like to make," and it correspondingly denied Amman Reu-El's motion to arrest judgment.

Turning to the motion to withdraw the plea, the district court expressed its understanding that Amman Reu-El was "essentially arguing that [he had] been treated unfairly, that the justice system has oppressed [him] and coerced [him] unfairly in regard to the prosecution of this matter." In response, Amman Reu-El first explained his contention that his plea was void because it relied at least in part on former testimony of a police detective which, pursuant to a pretrial order, was to be excluded from the second trial. The district court reminded Amman Reu-El that by signing the plea agreement he

10

represented he was "fully aware of the record, the basic facts that the Court was being asked to rely on"—a representation that was furthered during the plea colloquy. When the district court asked why Amman Reu-El did not raise this point at the time of the plea, Amman Reu-El said he felt that his rights had been so routinely violated that he had no other choice than to go along—especially since he had not been permitted to fire his counsel.

The district court then went through the nature of Amman Reu-El's complaints against his counsel, which the district court interpreted as being a disagreement about the attorneys' insistence on preparing for a trial that Amman Reu-El did not want to happen. The district court explained that a trial was forced upon Amman Reu-El because he had been accused of capital murder and attempted murder, not because his attorneys were pushing for a trial in violation of his rights.

Amman Reu-El then returned to his double jeopardy claim. He again pointed to *Abney* and his contention that it guaranteed him the right to have his double jeopardy arguments reviewed by an appellate court before trial began. The district court stated that it had already made its rulings about double jeopardy and due process. Amman Reu-El stated he had nothing further to discuss with his motion to withdraw plea, as he was "clearly not being heard nor understood."

The State then presented a series of Amman Reu-El's jailhouse calls. The State asserted Amman Reu-El was familiar with the criminal justice system and knew what he was doing in entering a no contest plea. According to the State, the tapes showed Amman Reu-El told his friends and family that he took a plea deal because he realized the case was not going in his favor and it was in his best interests to accept a plea now and appeal later. The jailhouse calls showed Amman Reu-El discussed his decisionmaking process

11

and weighed the benefits and detriments of a plea. The State then played excerpts of the calls to the court.

After hearing this evidence and the parties' arguments, the district court generally found Amman Reu-El "understood the gravity of the evidence against him and understood the consequences of standing with a no contest plea." Further, there was "sufficient evidence, which the Court can rely on," supporting the plea.

The district court then acknowledged that its consideration of Amman Reu-El's motion to withdraw was guided by factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), which include whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" Regarding the first *Edgar* factor, the district court found that Amman Reu-El was "represented by competent counsel and they discharged their responsibilities extraordinarily well." The district court then moved to the third *Edgar* factor and concluded it was satisfied Amman Reu-El understood all aspects of the plea process. The district court noted the jailhouse calls supported the conclusion that Amman Reu-El made his plea with understanding—for example, Amman Reu-El said the plea was "'well thought out'" and it appeared, to the district court, that he "may have intended all the time if he had some trump card that he could play on jurisdictional grounds, that would excuse him or release him from these charges." Finally, turning to the second *Edgar* factor, the district court concluded Amman Reu-El had not demonstrated that he was misled, coerced, mistreated, or unfairly taken advantage of. It acknowledged Amman Reu-El's claims that he "faced pressure by the fact the case was going to be tried," he did not want to go to trial, and he believed he had a valid double jeopardy argument. But the district court had already ruled adversely to those claims.

12

The district court concluded:

"In regard to all of these matters required to be considered by *Edgar* . . . I do not find that he has sustained his burden to withdraw his plea. He has not established good cause. I find that he is attempting to make judgment calls as to where he believes he may best achieve an outcome he defines as favorable and he decided to enter a plea and take his chances on his appeals of jurisdiction. To some degree, that could be called an attempt to manipulate the process. . . . [T]here's just simply no basis for him to claim now that he didn't understand what he was doing. He understood his legal rights, his obligations under the plea agreement, and he entered a fair and understanding plea. He's represented by counsel. He was not misled, coerced, mistreated, or unfairly taken advantage of in anything that occurred."

The district court also addressed, and declined to take action on, Amman Reu-El's affidavit/judicial complaint.

Accordingly, the district court denied Amman Reu-El's motions and moved on to sentencing. The district court sentenced Amman Reu-El to life imprisonment without possibility of parole for 25 years for the capital murder conviction, plus 165 months for attempted murder, to run consecutively.

Amman Reu-El appealed to this court that same day. His notice of appeal stated he was appealing the judgment, sentence, and all adverse rulings, including "all adverse rulings regarding jurisdiction, failure to provide a speedy trial, double jeopardy and the District Court's refusal to allow him to withdraw his nolo contendere pleas."

13

*Resolution of Amman Reu-El's habeas motion*

Before turning to the merits we will take a small side step to discuss what happened to Amman Reu-El's pro se habeas corpus action, which he had filed in an attempt to halt the second trial. In Amman Reu-El's petition for writ of habeas corpus, he specifically argued, among other things, that the State had lost jurisdiction when his Sixth Amendment right to effective assistance of counsel had been violated. He argued that due to his first trial counsel's extraordinarily ineffective assistance, the Double Jeopardy Clause should preclude a retrial even though the previous convictions were vacated on grounds other than those pertaining to guilt or innocence; he also argued that the State could not use a 1994 manslaughter conviction in any way, whether as the predicate felony for the unlawful possession of a firearm charge or as an aggravating factor for sentencing, without violating double jeopardy. Amman Reu-El did not make an explicit *Abney*-related argument in his petition, but, in supporting documents, he cited *Abney* for the proposition that an order denying a motion to dismiss on double jeopardy grounds is immediately appealable.

This court issued a show cause order after the district court denied Amman Reu-El's motion to withdraw his no contest plea. The order required Amman Reu-El to explain why the petition "should not be denied as moot in light of . . . [Amman Reu-El's] entering a no contest plea in his underlying criminal case and the district court's imposing sentences for the crimes."

In response, Amman Reu-El asserted he pleaded no contest "under Duress, Anxiety, Coercion, Threat of my Life being taken if I don't take a Plea to Crimes in which I have Proclaimed my Innocence since Day One." He explained he filed his habeas petition with the Kansas Supreme Court because it was "the only Proceeding which

14

affords a Petitioner a Speedy Remedy." He did not cite *Abney* or repeat his *Abney* argument. Nor did he assert he had been misled regarding his appellate rights. In fact, he stated the district court had told him he did not have the right to appeal its denial of his double jeopardy claims. He requested immediate release on the grounds that his convictions and sentences violated the Double Jeopardy Clause, in part because this court stated, in his first direct appeal, that our "confidence in the outcome of the jury's verdict is shaken to its core"—a holding Amman Reu-El argues is tantamount to a judgment of acquittal. See *State v. Cheatham*, 296 Kan. 417, 447, 292 P.3d 318 (2013).

This court dismissed Amman Reu-El's habeas petition on June 29, 2015, and it is not before us. Instead, we are concerned only with Amman Reu-El's direct appeal from his conviction and sentence—specifically, his argument that he should have been allowed to withdraw his no contest plea.

DISCUSSION

At the district court level, many of Amman Reu-El's good cause arguments focused on his allegations that his due process rights had been violated, that he had been coerced and mistreated, and that the court and counsel had taken advantage of him. But he does not advance those arguments on appeal. Consequently, we conclude Amman Reu-El has abandoned these arguments. See *State v. Edwards*, 260 Kan. 95, 98, 917 P.2d 1322 (1996) ("It is well settled that an issue neither briefed nor argued on appeal is deemed to have been abandoned."); *State v. Williams*, 298 Kan. 1075, 1083-84, 319 P.3d 528 (2014) (stating that a defendant also abandons an issue by failing to adequately brief it).

15

Instead, in this appeal, Amman Reu-El, through counsel, contends the parties and the court knew he was passionate about appealing a jurisdictional double jeopardy issue but nobody explained "that even though a double jeopardy claim may seem jurisdictional in nature, a no contest plea unquestionably waives the right to assert" such a claim on direct appeal and through collateral attack. According to Amman Reu-El, his case met all three of the *Edgar* factors to be considered on a defendant's motion to withdraw a plea: Defense counsel was ineffective by assuring Amman Reu-El he could continue to pursue his double jeopardy arguments despite his plea; the district court misled Amman Reu-El about whether the double jeopardy rulings were appealable after a plea; and, because Amman Reu-El did not understand the consequences of the plea, the plea was not fairly and understandingly made.

*Standard of review*

K.S.A. 2016 Supp. 22-3210(d)(1) addresses the standard for allowing the withdrawal of a no contest—or, as it is otherwise known, "nolo contendere"—plea before sentencing. It states:  "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." Accordingly, appellate courts review a district court's decision to deny a presentence motion to withdraw a plea, including the underlying conclusion that the defendant has not established good cause, for an abuse of discretion. *Edgar*, 281 Kan. at 38. This generally means that the district court's "decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards." *Edgar*, 281 Kan. at 38; see *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). Applying an abuse of discretion standard does not involve reweighing evidence or assessing witness

16

credibility; we defer to district court fact finding in these matters. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

*Analysis*

In this case, Amman Reu-El does not contend the district court applied the wrong legal standard. Rather, he concedes that the district court applied the correct standard when it discussed the *Edgar* factors of whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *Edgar*, 281 Kan. at 36 (quoting *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 [2001]). And while "other factors may be duly considered," *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010), Amman Reu-El did not rely on any other factor. He, therefore, must establish that no reasonable person would have agreed with the district court's assessment of the three *Edgar* factors and its ultimate conclusions that Amman Reu-El failed to establish good cause to withdraw his plea and that Amman Reu-El knowingly and voluntarily entered his plea. See, *e.g.*, *Edgar*, 281 Kan. at 37-38.

Although Amman Reu-El parses his arguments to nominally correlate to each of the three *Edgar* factors, the root of his complaint is that he was misinformed about whether he could continue to raise a double jeopardy claim on appeal. In making that argument, Amman Reu-El points to this court's statement in *State v. Rodriguez*, 254 Kan. 768, 775, 869 P.2d 631 (1994) (*Rodriguez I*), that "[i]f indeed the trial judge misinformed [a defendant] of the consequences of his plea, [the defendant] can have the plea set aside as not voluntarily and intelligently made." Amman Reu-El also cites an unpublished opinion of the Kansas Court of Appeals, which held that another consideration is whether defense counsel inaccurately advised that a pretrial ruling could be appealed even after a

no contest plea. See *State v. Gilbert*, No. 114,281, 2016 WL 3569944 (Kan. App. 2016) (unpublished opinion). In addition, we have also indicated that misinformation about the consequences of a plea might be provided to the defendant via a written plea agreement. See *State v. White*, 289 Kan. 279, 286, 211 P.3d 805 (2009). Each of these cases involved a *postsentencing* plea withdrawal issue where the defendant faced the more difficult burden of establishing manifest injustice. See K.S.A. 2016 Supp. 22-3210(d)(2) (after sentence, permitting a district court to set aside a conviction and permit plea withdrawal only "[t]o correct manifest injustice"); *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011) (making plain that a defendant filing a postsentence motion to withdraw plea on the grounds of ineffective assistance of counsel "must meet constitutional standards to demonstrate manifest injustice"); *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008) (explaining that good cause, the standard for a *presentence* motion to withdraw, is a "lesser standard" for a defendant to meet, compared to the postsentencing standard of manifest injustice).

Nevertheless, we see no reason the different standard vitiates the point on which Amman Reu-El relies. Nor does the differing standard alter another point made in these cases: A court considering a motion to withdraw a plea should look at the entire plea process—the written plea agreement, if any, counsel's advice, and the plea colloquy—to see whether, when all aspects are considered, the defendant understands the nature and consequences of a plea. The *White* court explained:

> "If a court fails to [inform the defendant of the consequences of a plea], the error can be
> deemed harmless and the plea need not be set aside if, upon review of the entire record,
> the purpose of [K.S.A. 22-3210(a)(2)] is otherwise served—*i.e.*, if a defendant is advised
> of the plea's consequences in a written plea agreement, by defense counsel, or in some
> other way. [Citation omitted.] Similarly, if the written plea agreement or defense counsel
> fails to advise the defendant of the consequences, a judge's compliance with the

18

requirements of K.S.A. 22-3210(a)(2) can remedy those failures." *White*, 289 Kan. at 287.

See also *State v. Rodriguez*, 261 Kan. 1, 2, 927 P.2d 463 (1996) (*Rodriguez II*); *Gilbert*, 2016 WL 3569944, at *4.

On the other hand, "[a] criminal defendant's misinformation from counsel about the applicable law during plea negotiations—particularly when reinforced by the written plea agreement and by counsel's and the district judge's incorrect statements during the defendant's plea hearing—easily constitutes good cause to withdraw no contest pleas under K.S.A. 22-3602(a)." *State v. Kenney*, 299 Kan. 389, 394, 323 P.3d 1288 (2014). And Amman Reu-El argues this is essentially what occurred in this case—both counsel and the court reinforced each other's misstatements, which "alluded" to a post-plea right to appeal his double jeopardy claims.

To assess whether the district court or defense counsel misled Amman Reu-El, we need to first examine the nature of the appellate rights he retained after entering a no contest plea. Amman Reu-El's arguments focus on an appeal from his convictions, not from his sentences. Accordingly, we, too, will examine the scope of Amman Reu-El's rights to appeal his conviction after he entered his no contest plea. K.S.A. 2016 Supp. 22-3602(a) defines those rights, stating:

> "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507, and amendments thereto."

19

Similarly, K.S.A. 2016 Supp. 22-3208(4) states:

> "A plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment other than it fails to show jurisdiction in the court or to charge a crime."

Under these provisions, a defendant waives double jeopardy arguments by entering a no contest plea. See *United States v. Broce*, 488 U.S. 563, 569, 573, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (holding guilty plea waives double jeopardy arguments); *State v. Edwards*, 281 Kan. 1334, 1341, 135 P.3d 1251 (2006) (no contest plea "waives all nonjurisdictional defects, including claims of double jeopardy").

Against this background of legal principles, Amman Reu-El was informed that he generally waived all appellate rights, except those based on jurisdiction. This information was provided to him in the written plea agreement. The agreement contained a waiver of rights section, and by signing the agreement Amman Reu-El confirmed he understood that by entering a no contest plea he waived legal rights that he would have been able to exercise had he gone to trial. Specifically, he acknowledged that if he went to trial he would have had the right to ask for a new trial "based upon any legal errors which may have denied my right to a fair trial or which may have otherwise prejudiced me in my defense." The plea agreement also included a separately titled "Right to Appeal" section, which, as we have previously quoted, stated Amman Reu-El understood "that by entering this plea I am waiving my right to appeal on any issue other than jurisdiction of the Court or whether the sentence exceeds that permitted by law." While the plea agreement did not specifically inform Amman Reu-El about the effect of his plea on his right to appeal his double jeopardy arguments, it did not contain any misinformation; it did not suggest or imply a double jeopardy claim is, or is not, a jurisdictional argument that survives a plea.

20

Accordingly, we find the plea agreement did not mislead or misinform Amman Reu-El about any ability to continue to raise a double jeopardy argument after a no contest plea.

The plea colloquy provided Amman Reu-El with a more detailed understanding of the consequences of his plea. The district court specifically asked Amman Reu-El whether he understood that *if he went to trial* he would be able to file posttrial motions and, "once the business is finished in the district court, a person would have a right to appeal a conviction to a higher court." The district court informed Amman Reu-El that during such an appeal—again, should he go to trial—Amman Reu-El "could challenge . . . whatever other rulings were made in the district court proceeding." The district court then told Amman Reu-El that by pleading guilty "you would waive or give up your right to take *any* appeal of a conviction." (Emphasis added.) Amman Reu-El stated he understood and had no questions about his rights. In fact, he stated he was "well informed about my rights, that's for sure."

Amman Reu-El somewhat shifted the district court's focus by expressing his understanding that a no contest plea meant he admitted he was "unable to contest the charges or the evidence." Arguably, this could be taken as an expression of Amman Reu-El's belief that a claim like double jeopardy that did not rest on guilt or innocence would survive a no contest plea. But the district court then cautioned Amman Reu-El that a no contest plea could not be easily set aside, and it specifically mentioned Amman Reu-El's "other types of pleadings for dismissal" and then said if the plea was accepted "*all of those proceedings or motions that you have filed would be resolved and could not be raised again.*" (Emphasis added.) This statement correctly explains the consequences of a plea.

In his brief, Amman Reu-El does not quarrel with the accuracy of any statement made up to this point in the proceedings. He argues, however, that subsequent exchanges between him and his counsel and between him and the district court confused the issue and left Amman Reu-El with "the mistaken impression" he "could continue to pursue his double jeopardy issue." The specific exchange on which Amman Reu-El focuses occurred immediately after the court told Amman Reu-El his various motions in the district court would be resolved and could not be raised again, a statement that prompted Amman Reu-El to confer with his attorney.

We do not know precisely what was said during this conference. We do know that Amman Reu-El's defense counsel, after speaking with Amman Reu-El, reminded the judge of the habeas corpus action pending in this court. According to defense counsel, he advised Amman Reu-El he "always has the right for a writ of habeas corpus"—but he claimed he had also told Amman Reu-El "there are limitations on his rights to appeal." He then added: "There is a right to appeal of this court's—of—not the convictions." Amman Reu-El's attorney added that he wanted to make it clear that "what appellate rights [Amman Reu-El] does have" would not be waived. These statements accurately reflect the two legal processes that would remain available to Amman Reu-El after a no contest plea. See K.S.A. 2016 Supp. 22-3602(a) (limiting right to appeal after plea of guilty or no contest on all grounds, "except that jurisdictional or other grounds going to the legality of the proceedings may be raised"); *In re Berkowitz*, 3 Kan. App. 2d 726, 728-30, 602 P.2d 99 (1979) (discussing use of habeas corpus remedy to pursue double jeopardy defense).

Amman Reu-El has not shown that his attorneys actually and affirmatively counseled him that he could successfully pursue his double jeopardy claim on appeal. And the district court also knew from the hearing on Amman Reu-El's motion to

discharge his attorneys that his attorneys had repeatedly advised Amman Reu-El his double jeopardy arguments had no merit and were not jurisdictional, meaning there would be nothing to appeal. Amman Reu-El did not suggest otherwise at the hearing on his motion to arrest judgment. In other words, nothing in the record substantiates the argument that Amman Reu-El's counsel misled him regarding his right to appeal.

Given this context, reasonable people could agree with the district court's assessment of the first *Edgar* factor and its conclusion that Amman Reu-El had received competent advice from his counsel and had not been misled by them. See *State v. Edgar*, 281 Kan. 30, 41, 127 P.3d 986 (2006).

As to what the district court said, the record reflects the judge responded to counsel's comments by saying, "Let's talk about those things for just a moment." The district court then made it clear it did not have any power over the disposition of the habeas action. The court explained to Amman Reu-El that "if the Supreme Court wants to take it up and pursue it, it certainly has that authority and jurisdiction to do so." But even then, the district court cautioned Amman Reu-El that a no contest plea "well could affect other things that you might have in mind with regard to your Supreme Court proceeding that is now pending." The court then said: "I don't want to leave you with any false hope that this case will in some way not affect that." Amman Reu-El replied: "I understand both what you have said, and I understand both what [my attorney] has said for me, so we'll just go from there." This reply suggests Amman Reu-El fully understood the consequence of his no contest plea on his pending habeas action.

In *Edgar*, we stated: "We are not persuaded that the requirement that a plea must be made 'understandingly' means the trial court must list for an accused all the rulings that preceded a plea and specifically state there is no right to appeal those rulings."

23

281 Kan. at 41; see also *Broce*, 488 U.S. at 573 (holding that it is not necessary to have a "conscious waiver . . . with respect to each potential defense relinquished by a plea"). Nevertheless, we agree with Amman Reu-El's premise that the district court should not provide misleading information. But, contrary to Amman Reu-El's assertion, when the district court discussed the effect of the plea on the habeas action, it did not make a misrepresentation.

The district court faced somewhat uncharted territory. While the Court of Appeals had considered the effect of *Abney* on Kansas law, this court had not and still has not. See *Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). And an *Abney*-based ruling that allowed a defendant to exhaust an interlocutory appeal might fall within K.S.A. 2016 Supp. 22-3602(a)'s exception that allows collateral proceedings going to "the legality of the proceedings" even after a no contest plea. The district court appropriately left future rulings on issues of first impression for this court. Nevertheless, the district court made an effort to disabuse Amman Reu-El of any "false hope" that his plea would not affect his pending habeas action. In the context of this case, the district court did not mislead Amman Reu-El.

Amman Reu-El also cites comments the district court made during the hearing on the motion to withdraw the plea that he asserts show that the court was confused about whether a plea waived the right to appeal double jeopardy rulings. Even if we were to agree with Amman Reu-El's interpretation of these statements, they lack any relevance to whether the district court said anything that misled Amman Reu-El before he entered his plea.

In light of this record, reasonable people could agree with the district court's evaluation of the second *Edgar* factor. The district court had repeatedly told Amman

24

Reu-El his double jeopardy argument did not raise jurisdictional concerns and the court told Amman Reu-El he waived all arguments, except those relating to jurisdiction, by entering a plea. He then left open a small window because of the habeas action but warned Amman Reu-El the plea could affect that action. Amman Reu-El replied: "I understand both what you have said, and I understand both what [my attorney] has said for me, so we'll just go from there." And when the district court said, "Okay," Amman Reu-El added: "Because, as I stated, like I said before and I say it again, it's my position that I can help more people with a life sentence than I can help people with a death sentence." Amman Reu-El's responses reflect he understood the consequences of entering a no contest plea.

As for the third *Edgar* factor, a defendant who enters a guilty or no contest plea waives several constitutional rights, and thus due process requires that the plea be knowingly and voluntarily made. "To be constitutionally valid, guilty pleas and their resulting waiver of rights 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Edgar*, 281 Kan. at 36-37 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 [1975]). A defendant's waiver of rights—such as the privilege against compulsory self-incrimination and the right to trial by jury—"cannot be presumed from a silent record;" "'the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.'" *Edgar*, 281 Kan. at 37 (quoting *Brady*, 397 U.S. at 747-48 n.4). As noted by the *Edgar* court, these constitutional due process requirements are reflected in K.S.A. 2016 Supp. 22-3210(a), which requires the district court, *inter alia*, to inquire into whether a plea was made "voluntarily with understanding of the nature of the charge and the consequences of the plea" and whether there is a factual basis supporting the plea. See 281 Kan. at 37. The third *Edgar* factor speaks to the ultimate question—whether a plea was knowingly and

voluntarily made—and thereby incorporates the two other *Edgar* factors and any other factors a district court may consider. See, *e.g.*, 281 Kan. at 37-38 (explaining that so long as "a review of the entire record shows the guilty plea was knowingly and voluntarily made," a violation of 22-3210[a] may be harmless error).

The district court's overall conclusion that Amman Reu-El's plea was understandingly made is supported by the jailhouse calls and the district court's assessment of Amman Reu-El's credibility. It found Amman Reu-El made his plea with understanding, in part because the tape transcripts revealed that Amman Reu-El believed his plea to be "well thought out." The district court found Amman Reu-El may have intended all along to play a jurisdictional "trump card" but that did not mean his plea was not voluntarily and knowingly entered into. In fact, the district court found Amman Reu-El made a reasoned judgment call about entering a no contest plea and there was "just simply no basis for him to claim now that he didn't understand what he was doing." See *Anderson*, 291 Kan. at 855 (deferring to district court fact findings and declining to assess witness credibility); *State v. Sanchez-Cazares*, 276 Kan. 451, 456, 78 P.3d 55 (2003) ("To make [the voluntariness] determination, the district court had to evaluate the credibility of [the defendant's] testimony regarding the voluntariness of his plea. We do not review the credibility of a witness on appeal."). The United States Constitution requires a defendant have "sufficient" awareness of a plea's likely consequences, not that a defendant understand all extenuating consequences and possible legal arguments, and the district court reasonably concluded that Amman Reu-El's plea was knowing and voluntary. See *Brady*, 397 U.S. at 748.

As an additional consideration, Amman Reu-El's original reasons for pleading no contest differ from his current assertion that he would not have done so if he had known he could not continue his double jeopardy claim. His expressed concerns at the plea

colloquy—and in the subsequent jailhouse tapes—were focused on the likelihood of a death penalty and the improbability of a successful appeal. And twice, before the district court, he asserted that he was pleading because he could help more people with a life sentence than a death sentence. Further, in his pro se motion to withdraw his plea he did not claim he was *misinformed* about whether double jeopardy was appealable after a plea—instead, he recounted his longstanding disagreement with his counsel about whether he had a valid double jeopardy claim, whether he could appeal a pretrial ruling on double jeopardy before trial, and whether he was entitled to a stay while this court considered his habeas petition.

The record sufficiently supports the district court's exercise of discretion, guided by the *Edgar* factors, in denying Amman Reu-El's motion. See *Edgar*, 281 Kan. at 38 (protecting the district court's decision, even "if reasonable persons could differ upon the propriety of the decision," so long as the decision "is made within and takes into account the applicable legal standards"); *State v. Denmark-Wagner*, 292 Kan. 870, 875, 258 P.3d 960 (2011) (finding an abuse of discretion where "no reasonable person" would agree with the district court). Accordingly, we hold the district court did not abuse its discretion in denying Amman Reu-El's motion to withdraw his no contest plea.

Affirmed.